John CELLINI, Plaintiff,

v.

HARCOURT BRACE & COMPANY;
Harcourt General, Defendants.

No. 98–1424–IEG LAB.

United States District Court,
S.D. California.

April 27, 1999.

---

Linda Zappe Flynn, Law Office of Linda Zappe Flynn, San Diego, CA, for plaintiff.

Phillip L. Kossy, Littler Mendelson, San Diego, CA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GONZALEZ, District Judge.

### BACKGROUND

Plaintiff John Cellini, a former employee of defendant Harcourt Brace & Company ("Harcourt Brace"), brings this action against Harcourt Brace and Harcourt General ("Harcourt General"), the parent corporation of Harcourt Brace, based on allegations surrounding his resignation from the position of telemarketing coordinator for Harcourt Brace's professional publishing division.

Plaintiff began his employment with Harcourt Brace on January 16, 1996. Prior to commencing his employment with Harcourt Brace, plaintiff signed an employment application, entitled "Harcourt Brace & Company Or A Subsidiary Application for Employment," which stated that plaintiff's employment could be terminated by Harcourt Brace "with or without cause" and "with or without notice at any time." (Dow Decl., Ex. 10.) During his employment with Harcourt Brace, plaintiff received copies of a bonus plan on three separate occasions which stated that plaintiff was an "at will" employee of Harcourt Brace.

On December 3, 1996, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment by a female supervisor, Jenna Lake ("Lake"). In his EEOC complaint, plaintiff alleged (1) that Lake routinely referred to plaintiff as "gigante phallus," "giant penis," and "GP"; (2) that Lake patted and pinched plaintiff's bottom in mid-September, as he was leaving the office of co-worker John Losavio ("Losavio"); and (3) that, while sitting in Losavio's office, Lake moaned and stated "I need sperm" in plaintiff's presence. Harcourt Brace conducted an internal investigation in response to plaintiff's complaint, which included interviews with plaintiff, Lake, Losavio, and co-worker Keri Sims ("Sims"). David Scroggins ("Scroggins"), Harcourt Brace's Employment Manager, conducted the internal investigation. Based on the results of the investigation, on December 17, 1996 Harcourt Brace reprimanded both plaintiff and Lake for unprofessional and inappropriate conduct. Harcourt Brace warned both Lake and plaintiff that any future conduct of this kind would result in their immediate termination.

After plaintiff received this initial warning, plaintiff confronted Losavio, accused him of making false statements, and called him a "scum." Losavio reported this incident to the Human Resources Department. Subsequently, Sims reported that plaintiff had telephoned her at her home, on two separate occasions, wishing to talk to her about his sexual harassment complaint against Lake. Sims stated that she was uncomfortable interacting with plaintiff at work. On December 23, 1996, Marilyn Bailin ("Bailin"), Director of Harcourt Brace's Human Resources Department, issued a second written warning reprimanding plaintiff for his "rude and abusive" conduct toward Sims and Losavio. In addition, plaintiff's supervisor, Christine Lee ("Lee"), instructed plaintiff not to interact directly with either Lake or Sims in the future.

Plaintiff contends that, after he filed his sexual harassment complaint with the EEOC, he was subjected to adverse treatment by his co-workers at Harcourt Brace. In addition to the aforementioned investigation, warnings, and instructions, plaintiff claims that Harcourt Brace employees retaliated against him by subjecting him to unjustified criticisms of his job performance. Plaintiff resigned from Harcourt Brace on January 15, 1997, in anticipation of a negative job performance evaluation on his one-year anniversary.

On February 17, 1998, plaintiff filed suit against defendants in San Diego Superior Court.[1] In his complaint, plaintiff asserts the following nine state law causes of action against defendants: (1) sexual discrimination and harassment in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (2) failure to maintain a workplace free from harassment in violation of FEHA; (3) retaliation in violation of FEHA; (4) statutory discrimination in violation of California Civil Code sections 51.5, 51.7, 51.9, 52, and 52.1; (5) intentional infliction of emotional distress; (6) violation of Article I, sections 1, 7, and 8 of the California Constitution; (7) wrongful constructive termination in violation of public policy; (8) breach of an implied-in-fact contract to only terminate for good cause; and (9) defamation. Plaintiff dismissed his fourth cause of action on June 2, 1998, in response to a demurrer filed by defendants in state court.

Defendants removed plaintiff's suit to this Court on August 5, 1998, invoking the Court's jurisdiction based on the parties' diversity of citizenship.[2] On March 10, 1999, the parties stipulated to the dismissal of plaintiff's first, second, fifth, and ninth causes of action. Now before the Court is defendants' motion for summary judgment or, in the alternative, for partial summary judgment on plaintiff's remaining third, sixth, seventh, and eighth causes of action.

## DISCUSSION

### A. Applicable Law

■ A federal district court sitting in diversity must apply the substantive law of the forum state. *See, e.g., American Triticale, Inc. v. Nytco Servs., Inc.,* 664 F.2d 1136, 1141 (9th Cir.1981) ("It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law.") (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In the present case, defendants removed plaintiff's action from the California state court to the United States District Court for the Southern District of California based on diversity of citizenship. Therefore, the Court is required to apply California's substantive law in ruling on defendant's motion for summary judgment.

■ In a diversity suit, however, federal law governs questions of procedure. *See Hanna v. Plumer,* 380 U.S. 460, 470–74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Because a motion for summary judgment is a procedural device, *see* Fed.R.Civ.P. 56, in the instant case the Court applies the federal standard for summary judgment. *See, e.g., Martinez v. Asarco Inc.,* 918 F.2d 1467, 1470 n. 3, 1474 (9th Cir.1990) (applying, in a diversity case, the federal standard for summary judgment in reviewing whether the plaintiff's evidence was sufficient to withstand the defendant's motion for summary judgment).

### B. Motion for Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A moving party who bears

---

1. In his complaint, plaintiff also names Lake as a defendant. Plaintiff dismissed his action against Lake on June 16, 1998.

2. The dismissal of Lake as a defendant on June 16, 1998 eliminated the only non-diverse party in this case.

the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* The moving party is not required to produce evidence showing the absence of genuine issues of material fact. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Nor must the moving party support his or her motion with evidence negating the non-moving party's claim. *See id.* Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and offer "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Throughout the review of a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, "if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Products v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987).

## C. Analysis

### 1. Harcourt General's Liability

At the outset, the Court addresses defendants' motion for summary judgment as to the claims against Harcourt General. Defendants argue that, under the facts of this case, Harcourt General cannot be held liable for the acts or omissions of its subsidiary, Harcourt Brace. Plaintiff contends that triable issues of fact exist as to whether Harcourt General can be held liable for the tortious acts of Harcourt Brace under an agency theory of liability.[3]

Under both federal and California law, an "employer" includes any agent of an employer. *See* 42 U.S.C. § 2000e(b); Cal. Gov't Code § 12926. An agent, under California law, is "one who represents another, called the principal, in dealings with third persons." Cal.Civ.Code § 2295. Recently, in *Laird v. Capital Cities/ABC, Inc.,* 68 Cal.App.4th 727, 741, 80 Cal. Rptr.2d 454 (1998), the California Court of Appeal, Third Appellate District, held that in order to establish a parent corporation's liability for the acts or omissions of its subsidiary under an agency theory, a plaintiff "must show more than mere representation of the parent by the subsidiary in dealings with third persons." *Id.* Rather, the plaintiff must show that the "parent corporation so controls the subsidiary as to cause the subsidiary to become merely the agent or instrumentality of the parent." *Id.* (internal quotation marks omitted).

Plaintiff has not produced a triable issue of fact as to whether Harcourt General can be held liable for the acts or omissions of Harcourt Brace under an agency theory. In support of his agency theory, plaintiff points to the fact that

---

**3.** Notably, plaintiff does not argue, and has not produced any evidence, that he possessed an employment contract with Harcourt General directly. In fact, such an argument appears unavailable to plaintiff. Plaintiff's employment application identifies Harcourt Brace, or *its* subsidiaries, as plaintiff's employer. (*See* Dow Decl., Ex. 10.) In addition, in his response to an interrogatory propounded by Harcourt Brace, plaintiff identified himself as an employee of Harcourt Brace only. (*See* Dow Decl., Ex. 20.) Absent any evidence (or allegation) of a direct contractual relationship between plaintiff and Harcourt General, the Court examines whether plaintiff can hold Harcourt General liable under an alternative theory of employer liability.

Harcourt General provided employee benefits programs for Harcourt Brace employees; that Harcourt General issued a code of conduct that applied to Harcourt Brace employees; that Bailin contacted Martha Walz ("Walz"), Harcourt General's corporate counsel, about plaintiff's lawsuit;[4] and that Harcourt General provided sexual harassment seminars for Harcourt Brace employees in San Diego. These facts, however, are insufficient to establish an agency relationship between Harcourt General and Harcourt Brace because they do not demonstrate that Harcourt General exercised any control over Harcourt Brace's day-to-day employment decisions. *Cf. Laird,* 68 Cal.App.4th at 741, 80 Cal.Rptr.2d 454 (holding that a plaintiff alleging employment discrimination had failed to create a triable issue of fact as to whether a parent corporation was liable for the actions of its subsidiary because the plaintiff had made no showing that the parent corporation had exercised any control over the subsidiary's employment decisions). For example, plaintiff has produced no evidence indicating that the individuals who evaluated plaintiff's work performance or reprimanded plaintiff were acting at the behest of Harcourt General's management. On the contrary, the uncontroverted evidence in this case demonstrates that Harcourt Brace's day-to-day employment decisions—such as hiring, performance evaluations, and work assignments—are conducted by Harcourt Brace employees without the involvement of Harcourt General. Harcourt General and Harcourt Brace also maintain their own separate human resources departments and separate payrolls. In addition, plaintiff has produced no evidence that the operations of Harcourt Brace and Harcourt General are interrelated in the sense that Harcourt General exercises greater control over Harcourt Brace's operations than a parent corporation normally would exercise over a subsidiary, or that the two corporations share management-level em-

ployees. Absent evidence of this kind, the Court finds that no reasonable trier of fact could conclude that Harcourt Brace was so controlled by Harcourt General that Harcourt Brace functioned as Harcourt General's mere agent or instrumentality.

Plaintiff does not specify whether, alternatively, he is attempting to hold Harcourt General liable for the acts or omissions of Harcourt Brace on the theory that the two entities constitute a single employer. In his complaint and motion papers, however, plaintiff refers to Harcourt Brace and Harcourt General collectively. (*See, e.g.,* Compl. at 2 ("On or about January 16, 1996, Plaintiff began full time employment with HARCOURT as a telemarketing coordinator.").) Even assuming that plaintiff is attempting to hold Harcourt General and Harcourt Brace liable as a single employer, the Court finds that plaintiff has failed to show a triable issue of fact as to Harcourt General's liability under this theory.

■■■ In *Laird,* the Court of Appeal applied the "integrated enterprise" test—a test derived from federal labor case law—to determine whether a parent and subsidiary corporation could be held liable as a single employer in a discrimination suit. *See Laird,* 68 Cal.App.4th at 738–40, 80 Cal.Rptr.2d 454. The integrated enterprise test requires an examination of four factors: interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. *See id.* Under this test, however, "common ownership or control alone is never enough to establish parent liability." *Id.* at 738, 80 Cal.Rptr.2d 454. In addition, although a court must consider each of the factors, the critical inquiry requires an examination of which entity made the final decisions regarding employment matters. *See id.*

---

4. Plaintiff alleges in his brief that Bailin had multiple telephone conversations with Walz concerning plaintiff. The evidence cited by plaintiff, however, only indicates the existence of a single telephone conversation between Bailin and Walz.

As discussed above, plaintiff has produced no evidence (1) that Harcourt General exercised control over Harcourt Brace's employment decisions, (2) that the operations of Harcourt Brace and Harcourt General were interrelated in the sense that Harcourt General exercised greater control over Harcourt Brace's operations than a parent corporation normally would exercise over a subsidiary, or (3) that the two corporations share a common management. Although Harcourt Brace is a subsidiary of Harcourt General, as explained above, this fact alone is not sufficient to establish Harcourt General's liability under the integrated enterprise test. The Court therefore finds that plaintiff has failed to raise a triable issue of fact as to Harcourt General's liability for Harcourt Brace's acts or omissions even under this alternative theory.

For the foregoing reasons, the Court hereby **GRANTS** defendants' motion for summary judgment as to the claims against Harcourt General. Plaintiff's claims against Harcourt General are **DISMISSED WITH PREJUDICE.**[5]

## 2. Plaintiff's State Constitution and Constructive Termination Claims

Defendants move for summary judgment on plaintiff's sixth and seventh causes of action—alleging violation of Article I, sections 1, 7, and 8 of the California Constitution, and wrongful constructive termination in violation of public policy, respectively—on the ground that both of these causes of action are barred by California's one-year statute of limitations. *See Acuna v. Regents of the Univ. of Cal.*, 56 Cal.App.4th 639, 645–46, 65 Cal.Rptr.2d 388 (1997) (holding that a one-year statute of limitations governs claims asserting violations of personal rights under the California Constitution); *Barton v. New United Motor Mfg., Inc.*, 43 Cal.App.4th 1200, 1209, 51 Cal.Rptr.2d 328 (1996) (holding that a one-year statute of limitations gov-

erns claims for wrongful termination in violation of public policy). Plaintiff did not commence his suit until February 17, 1998—more than one year after the date that his resignation became effective (i.e., January 15, 1997). Plaintiff acknowledges that his sixth and seventh causes of action are barred by the statute of limitations and does not oppose defendants' motion for summary judgment as to these claims. Accordingly, the Court hereby **GRANTS** defendants' motion for summary judgment as to plaintiff's sixth and seventh causes of action. Plaintiff's sixth and seventh causes of action are **DISMISSED WITH PREJUDICE.**

## 3. Plaintiff's FEHA Retaliation Claim

Defendants next move for summary judgment on plaintiff's third cause of action—plaintiff's FEHA retaliation claim. FEHA prohibits an employer from retaliating against an employee, including an at-will employee, "because the person has opposed any practices forbidden under . . . [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under . . . [FEHA]." Cal. Gov't Code § 12940(f). Absent direct evidence of retaliation, the elements of a FEHA retaliation claim require (1) that the plaintiff establish a prima facie case of retaliation, (2) that the defendant articulate a legitimate, nonretaliatory explanation for its actions, and (3) that the plaintiff show that the defendant's proffered explanation is merely a pretext for its retaliatory actions. *See, e.g., Flait v. North American Watch Corp.*, 3 Cal.App.4th 467, 476, 4 Cal.Rptr.2d 522 (1992). In cases in which the plaintiff offers direct evidence of retaliatory motive, the plaintiff needs to produce "very little" evidence of pretext to create a triable issue as to the actual motivation of the employer. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998) (discussing the showing of pre-

---

**5.** The Court notes that, even assuming that Harcourt General can be held liable for the acts and omissions of Harcourt Brace, the Court would still grant summary judgment in favor of Harcourt General for the reasons identified by the Court below.

text by a plaintiff in a FEHA discrimination suit sufficient to overcome a defendant's motion for summary judgment). In contrast, in those cases in which direct evidence of retaliation is unavailable, the plaintiff must come forward with "specific and substantial" circumstantial evidence tending to show that the employer's proffered justifications were pretextual in order to survive a motion for summary judgment. *Id.* at 1222 (internal quotation marks omitted).

■ Defendants first move for summary judgment on plaintiff's FEHA retaliation claim on the ground that plaintiff has failed to establish a prima facie case of retaliation. A plaintiff may establish a prima facie case of retaliation by showing that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the protected activity and the employer's action. *See Flait,* 3 Cal.App.4th at 476, 4 Cal.Rptr.2d 522. Defendants do not dispute either that plaintiff engaged in a protected activity by filing a complaint alleging sexual harassment with the EEOC or that causation sufficient to establish plaintiff's prima facie burden can be inferred from the proximity of time between the filing of plaintiff's EEOC complaint and Harcourt Brace's actions with respect to plaintiff. Defendants argue, however, that plaintiff has failed to make a prima facie case of retaliatory termination because plaintiff has not produced any evidence that he was subjected to any "tangible" adverse employment action, such as a loss of salary, benefits, or position. Plaintiff contends that adverse

employment actions that fall short of being "tangible" suffice to establish a prima facie case of retaliation. As the California courts have not addressed the issue of whether an adverse employment action must be "tangible" in order to constitute retaliation under FEHA, the Court looks for guidance on this issue to the federal courts' treatment of the adverse action requirement in retaliation suits brought pursuant to Title VII. *See Flait,* 3 Cal. App.4th at 475–76, 4 Cal.Rptr.2d 522 (recognizing that suits claiming retaliatory discharge in violation of FEHA are analogous to federal retaliation claims brought pursuant to Title VII and, therefore, that federal law interpreting Title VII is instructive in evaluating retaliation claims brought pursuant to FEHA).

The federal courts are divided on the issue of what constitutes an adverse employment action for purposes of Title VII.[6] The Fifth and Eighth Circuits have held that only adverse employment actions that rise to the level of "ultimate" employment decisions—e.g., decisions involving hiring, the granting of leave, terminations, promotions, and compensation—are actionable under Title VII. *See Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th Cir.1995) (holding that "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions"); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 706–708 (5th Cir.1997) (finding that hostility from co-workers, threats of discharge, ridicule, and missed pay increases do not constitute adverse employment ac-

---

6. Defendants' suggestions to the contrary notwithstanding, the United States Supreme Court did not address this issue in *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998). In *Ellerth,* the Supreme Court defined the phrase "tangible employment action" in considering the issue of an employer's vicarious liability for the actions of its employees in hostile work environment cases. *Id.* ("[W]e think it prudent to import the concept of a tangible employment action for resolution of the vicarious liability issue we consider here. A tangi-

ble employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). *Ellerth,* however, did not address the kinds of adverse employment actions that a plaintiff must demonstrate in order to establish a prima facie case of retaliation. Accordingly, in the present case *Ellerth* is instructive only insofar as it defines the concept of "tangible" adverse employment actions.

tions because of their "lack of consequence"); *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir.1997) (holding that only adverse employment actions that "rise to the level of an ultimate employment decision [are] intended to be actionable under Title VII"). In contrast, the First, Seventh, Tenth, and Eleventh Circuits have indicated that Title VII's protection against retaliatory discrimination can extend to adverse actions that fall short of ultimate employment decisions. *See Wyatt v. City of Boston*, 35 F.3d 13, 15–16 (1st Cir.1994) (stating that actions other than discharge are covered by Title VII's anti-retaliation provision and listing as examples, "employer actions such as demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees"); *Knox v. Indiana*, 93 F.3d 1327, 1334–35 (7th Cir. 1996) (stating that "[t]here is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited upon an employee who seeks to invoke her rights" and finding that co-worker harassment and vicious gossip sufficed to support a jury verdict in favor of an employee claiming retaliation); *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir.1998) (holding that co-worker hostility or retaliatory harassment, if sufficiently severe, can constitute adverse employment action for purposes of a Title VII retaliation claim);[7] *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998) (finding that written reprimands, an employer's solicitation of negative comments by co-workers, and a one-day suspension constituted adverse employment actions).

The Ninth Circuit has not provided clear guidance on this issue. In *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987), for example, the Ninth Circuit stated that such employment decisions as "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions'" cognizable under Title VII. This language suggests that an adverse action does not need to rise to the level of an "ultimate" employment decision in order to be actionable. Yet, more recently, in *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir.1994), the Ninth Circuit questioned the existence of adverse employment action where an employee was transferred to a different work shift, but did not suffer any material detriment. *Id.* at 1465 n. 6 ("We note in addition that the transfer is just barely—if at all—characterizable as 'adverse' employment action: Steiner was not demoted, or put in a worse job, or given any additional responsibilities.").[8] In addition, in *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir.1996), the Ninth Circuit declined to view an employee's transfer, which was not accompanied by any material detriment such as a decrease in pay or grade, as an adverse employment action. *Id.; see also Strother v. Southern Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir.1996) (stating that "[n]ot every employment decision amounts to an adverse employment action" and that "[f]or example, mere ostracism in the workplace is not enough to show an adverse employment decision"); *Kortan v. California*, 5 F.Supp.2d 843, 853 (C.D.Cal. 1998) (finding that a low performance evaluation, a denied request for a change in supervisors, a denied request for a transfer, and denied access to files did not constitute adverse employment actions because these actions "did not place the plaintiff in a worse job, give her any additional, fewer or different responsibilities" or "result in a loss of salary or benefits") (citing *Steiner*, 25 F.3d at 1465, and *Mat-*

7. *But cf. Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir.1998) (recognizing that, although "[t]he law in this circuit liberally defines adverse employment action," "unrealized threats or tense personal relationships do not rise to the level of actionable retaliation").

8. In *Steiner*, the Ninth Circuit did find, however, that the employee in that case had established a prima facie case or retaliation stemming from three low marks on her employee evaluation. *See id.* at 1465.

*tern,* 104 F.3d at 707); *Cable v. Department of Dev. Servs.,* 973 F.Supp. 937, 942 (C.D.Cal.1997) (defining adverse employment action, in a Title V case, as "one that causes 'tangible harm, such as loss of salary, benefits, or position' ") (quoting *Wu v. Thomas,* 996 F.2d 271, 273 (11th Cir. 1993)). The more recent decisions within the Ninth Circuit appear to indicate that, although an adverse action need not be an "ultimate" employment decision in order to be actionable, a plaintiff must nevertheless demonstrate some adverse material effect upon the terms or conditions of employment stemming from the employer's actions in order to satisfy the adverse action requirement.

▮ In the present case, plaintiff has failed to establish a prima facie case of retaliatory termination because plaintiff has not produced evidence that Harcourt Brace's actions materially affected the terms and conditions of his employment. In opposition to defendants' motion, plaintiff alleges the following actions by Harcourt Brace's employees in satisfaction of the adverse action requirement: (1) Harcourt Brace's employees "pressured" plaintiff to speak with Scroggins about the substance of plaintiff's sexual harassment claim against Lake; (2) Scroggins conducted an incomplete and biased internal investigation of plaintiff's harassment claim; [9] (3) on December 17, 1996, Harcourt Brace gave plaintiff a written warning, reprimanding him for inappropriate and unprofessional conduct because of his relationship with Lake; (4) on December 23, 1996, Harcourt Brace gave plaintiff a second written warning for calling Losavio a "scum" and for pressuring Sims to provide plaintiff with a written statement in support of plaintiff's sexual harassment claim; (5) on December 23, 1996, Lee instructed plaintiff not to interact directly with either Sims or Lake on a telemarketing campaign, following a complaint by Sims that she felt uncomfortable interacting with plaintiff; (6) plaintiff was treated "rudely" by Lee; (7) Lee maintained a file on plaintiff that documented plaintiff's emotional state, and (8) plaintiff received "several" e-mail messages from Lee critical of his job performance.[10] As an initial matter, the Court finds that plaintiff has failed to produce any evidence in support of two of his allegations. First, plaintiff has failed to identify any specific evidence in support of his sweeping claim that he was treated "rudely" by Lee. Second, plaintiff has identified only a single e-mail message—dated December 19, 1996—that was sent by Lee to plaintiff which, on its face, is *not* critical of plaintiff's job performance. (*See* Cellini Decl., Ex. 2.) Assuming the truth of plaintiff's other allegations, the Court finds that none of these actions constitute a cognizable adverse employment action, since plaintiff has provided no evidence that any of these actions had any adverse material effect upon the terms or conditions of plaintiff's employment. Plaintiff has not alleged, for example, that any of these actions cost plaintiff a promotion or led to a decrease in plaintiff's benefits, compensation, or responsibilities.

▮ Moreover, plaintiff has not demonstrated that the totality of the aforementioned actions created conditions suffi-

---

9. Specifically, plaintiff alleges that Scroggins interviewed plaintiff for only ten minutes and thereafter prepared a one-sided account of the interview. In addition, plaintiff alleges that Scroggins intentionally failed to interview all of the witnesses who could have corroborated plaintiff's charge of sexual harassment. In particular, plaintiff alleges that Scroggins failed to interview Dann Bergmann, another male employee at Harcourt Brace who allegedly had been pinched by Lake, Renee Fountain, an employee who had warned the president of Harcourt Brace about Lake's flirtatious conduct, and Lynette Sul ("Sul"), an employee who spoke to plaintiff shortly after Lake allegedly pinched plaintiff.

10. Plaintiff also alleges that Harcourt Brace retaliated against Sul after she corroborated plaintiff's claims of sexual harassment. However, plaintiff has not explained why this allegation is relevant to the issue of whether defendants retaliated against *plaintiff* for filing a sexual harassment complaint.

ciently egregious and intolerable so as to support a finding of constructive termination.[11] To establish a claim of constructive discharge under California law, a plaintiff must demonstrate employment conditions that were so extraordinary, egregious, and intolerable that a reasonable person would have had no alternative but to resign. *See, e.g., Turner v. Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 1246, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994) ("The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job . . . ."). Isolated incidents of the kind identified by plaintiff simply do not amount to the kind of egregious conduct necessary to support a finding of constructive discharge. *Cf. Soules v. Cadam, Inc.*, 2 Cal.App.4th 390, 401, 3 Cal.Rptr.2d 6 (1991) (holding that "demotion of an employee or criticism of his job performance—even if alleged to be unfair or outrageous—does not . . . create the intolerable working conditions necessary to support a claim of constructive discharge"). Moreover, although plaintiff has provided evidence indicating that he may have suffered from anxiety stemming from his work environment, under California law a plaintiff's subjective reactions to the employment environment are not relevant. *See Turner*, 7 Cal.4th at 1248, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (holding that the proper focus in a constructive discharge case is on the working conditions themselves, rather than on the plaintiff's subjective reactions to those conditions).

██ Even assuming that plaintiff has established a prima facie case of retaliation, the Court finds that plaintiff has failed to produce the specific and substantial evidence necessary to rebut defendants' proffered legitimate, nonretaliatory reasons for Harcourt Brace's employment actions.[12] First, defendants acknowledge that Harcourt Brace employees pressured plaintiff into speaking with Scroggins about plaintiff's sexual harassment claim. Defendants argue, however, that Harcourt Brace had a legal duty to investigate plaintiff's sexual harassment claim and to take immediate corrective action. In light of defendants' clear legal duty to investigate plaintiff's sexual harassment claim, *see generally Ellerth*, 118 S.Ct. at 2270–71 (holding that an employer may be held vicariously liable under Title VII for a supervisor's sexual harassment of an employee and that an employer may avoid liability by showing by a preponderance of evidence that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior), the Court finds that plaintiff has failed to demonstrate retaliation based on the fact that he felt pressured to cooperate with defendants' internal investigation of his sexual harassment claim.

██ Second, defendants have demonstrated a legitimate, non-retaliatory reason for reprimanding plaintiff on December 17, 1996 for inappropriate and unprofessional conduct—namely, that three of Harcourt Brace's employees had reported inappropriate and unprofessional behavior by plaintiff. The undisputed evidence in this case establishes that Losavio, Lake, and Sims reported that plaintiff had participated in various acts of inappropriate conduct, including holding a pool cue in a provocative manner, participating in sexual banter (including referring to himself as "GP"), intentionally brushing himself up against and bumping into Lake in hallways, and

11. Plaintiff argues in his brief that the totality of the aforementioned actions resulted in plaintiff's constructive discharge and, implicitly, that proof of an employee's constructive termination can satisfy the adverse action requirement. In particular, plaintiff argues that the totality of the aforementioned actions caused plaintiff to resign in anticipation of a negative evaluation on his one-year anniversary.

12. Plaintiff has not produced any direct evidence of retaliation by plaintiff. Accordingly, the Court examines whether plaintiff has met his burden of producing specific and substantial circumstantial evidence tending to show that defendants' proffered justifications were pretextual. *See Godwin*, 150 F.3d at 1222.

kissing Lake on the mouth without invitation in front of the office building on one occasion. Plaintiff has only offered blanket denials of these allegations in rebuttal. Moreover, even assuming that the allegations made by Losavio, Lake, and Sims were false, plaintiff has not produced specific and substantial circumstantial evidence indicating that Harcourt Brace lacked a good faith basis for reprimanding plaintiff based on these allegations. The federal courts have recognized that an ill-informed or ill-considered action by an employer is not automatically pretextual if the employer articulates an honest explanation in support of its action. *See, e.g., Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1304 (7th Cir.1991) ("[O]our inquiry in this case is not whether the alleged acts actually occurred. Rather, our inquiry is limited to whether the employer's belief was honestly held."). Although plaintiff disputes the adequacy of defendants' investigation of plaintiff's sexual harassment claim against Lake, plaintiff has not produced evidence demonstrating that Harcourt Brace's investigation of *plaintiff's* conduct was insufficient to support Harcourt Brace's determination that *plaintiff* had behaved inappropriately. Plaintiff has not produced evidence indicating, for example, that the three witnesses that Scroggins failed to interview would have stated that plaintiff had not participated in the unprofessional conduct of which he was accused. Absent such evidence, no reasonable trier of fact could conclude that Harcourt Brace's internal investigation was a sham or that the December 17th warning was motivated by retaliatory animus.

Third, defendants contend that Harcourt Brace had a good-faith basis for reprimanding plaintiff on December 23, 1996. The undisputed evidence in this case establishes that plaintiff called Losavio a "scum" after plaintiff received his first warning and that Losavio complained about this incident to Human Resources. In addition, the undisputed evidence establishes that plaintiff contacted Sims at her home in an attempt to obtain a favorable statement from her concerning his sexual harassment claim against Lake and that Sims thereafter complained to Human Resources that plaintiff's contacts were making her uncomfortable. Plaintiff has not produced the strong and substantial circumstantial evidence necessary to demonstrate that Harcourt Brace's second written warning was motivated by retaliatory animus. Plaintiff points merely to the fact that the second written warning was issued three days after Sul informed Scroggins that she had observed Lake pinch plaintiff and five days following Sims' complaint about plaintiff's first telephone call as circumstantial evidence that the second warning was retaliatory. Plaintiff, however, has ignored the fact that Harcourt Brace's second warning was issued shortly after Sims complained of plaintiff's *second* telephone call.

Fourth, defendants have cited a legitimate, non-retaliatory reason for Lee's instruction that plaintiff not interact directly with either Lake or Sims—i.e., to avoid further trouble between these three employees. The undisputed evidence in this case establishes that Sims requested that she not have to deal with plaintiff directly and that plaintiff had accused Lake of sexual harassment. Plaintiff has not offered any explanation, much less any evidence, for why it was inappropriate for defendants to instruct plaintiff not to interact directly with either Lake or Sims in light of these facts. In addition, although plaintiff alleges that this instruction created delays for plaintiff in working on a telemarketing campaign, plaintiff has not identified any detriment that he suffered because of these delays.

For the foregoing reasons, the Court hereby **GRANTS** defendants' motion for summary judgment on plaintiff's FEHA retaliation claim. Plaintiff's FEHA retaliation claim is **DISMISSED WITH PREJUDICE.**

### 4. Plaintiff's Breach of Implied–in–Fact Contract Claim

Finally, defendants move for summary judgment on plaintiff's breach of implied-

in-fact contract claim. Defendants argue that plaintiff's employment with Harcourt Brace was "at will," whereas plaintiff contends that he was constructively discharged in violation of an implied contract requiring good cause for termination.

■ Generally, the existence of an implied-in-fact contract requiring good cause for termination is a question for the trier of fact; however, if only one reasonable conclusion can be drawn from the undisputed facts, the issue may be decided as a matter of law on summary judgment. *See Davis v. Consolidated Freightways*, 29 Cal.App.4th 354, 366, 34 Cal.Rptr.2d 438 (1994). In the present case, plaintiff contends that there is a triable issue of fact as to whether his employment with Harcourt Brace was terminable only for cause. For the reasons that follow, the Court disagrees.

■ In California, "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other." Cal. Labor Code § 2922. Labor Code section 2922 establishes a presumption of at-will employment if the parties have made no express oral or written agreement specifying the length of employment or the grounds for termination. This presumption may, however, be overcome by evidence that, despite the absence of a specified term, the parties agreed that the employer's power to terminate would be limited in some way, for example, by a requirement that termination be based only on "good cause." *See Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 677, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). In the employment context, "factors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including 'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.'" *Id.* at 680, 254 Cal.Rptr. 211, 765 P.2d 373 (quoting *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 327, 171 Cal. Rptr. 917 (1981)).

As the parties seeking summary judgment, defendants have the initial burden of demonstrating that plaintiff was an at-will employee. To meet this burden, defendants cite the presumption of at-will employment established by Labor Code section 2922. In addition, defendants have offered evidence that, in applying for employment with Harcourt Brace, plaintiff signed an application that stated that his employment with Harcourt Brace could be terminated "at will." Defendants have also offered evidence that plaintiff received three copies of a bonus plan containing at-will language and that plaintiff continued his employment with Harcourt Brace after having received these reminders of his at-will employment status. Since defendants' evidence is sufficient to demonstrate that plaintiff was an at-will employee of Harcourt Brace, the burden shifts to plaintiff to show the existence of a triable issue of fact as to his employment status.[13]

■ In support of his implied contract claim, plaintiff contends that during his employment with defendants, he received positive performance reviews, a salary increase, and unspecified verbal assurances about long-term employment. The California courts, however, have consistently rejected the notion that evidence of positive performance reviews, commendations, salary increases, and vague assurances of long-term employment are sufficient to

---

13. The California courts have held that an application for employment is a "mere solicitation of an offer of employment" and, therefore, that "at-will language contained in a standardized, preprinted application for employment may not be the sole basis for rejecting a claim of an implied contract not to terminate except for good cause." *Harden v. Maybelline Sales Corp.*, 230 Cal.App.3d 1550, 1552, 1556, 282 Cal.Rptr. 96 (1991). Nevertheless, at-will language in an employment application constitutes "evidence concerning the ultimate agreement entered into between the parties." *Id.* at 1556, 282 Cal.Rptr. 96.

create a triable issue of fact as to whether the parties have implicitly agreed to modify the terms of an at-will employment arrangement. *See, e.g., Kovatch v. California Casualty Management Co.,* 65 Cal. App.4th 1256, 1276, 77 Cal.Rptr.2d 217 (1998); *Gould v. Maryland Sound Indus., Inc.,* 31 Cal.App.4th 1137, 1152, 37 Cal. Rptr.2d 718 (1995); *Miller v. Pepsi–Cola Bottling Co.,* 210 Cal.App.3d 1554, 1559, 259 Cal.Rptr. 56 (1989). Notably, plaintiff has produced no evidence of any personnel policies or practices either at Harcourt Brace or in the publishing industry to terminate employees only for good cause.[14] In addition, plaintiff cannot point to longevity of service in support of his implied contract claim; plaintiff worked at Harcourt Brace for less than one year. In light of the foregoing, the Court finds that plaintiff has failed to raise a triable issue of fact as to the at-will nature of his employment with Harcourt Brace. The Court therefore **GRANTS** defendants' motion for summary judgment on plaintiff's breach of implied-in-fact contract claim. Plaintiff's breach of implied-in-fact contract claim is hereby **DISMISSED WITH PREJUDICE.**[15]

### CONCLUSION

For the reasons already stated, the Court hereby **GRANTS** defendants' motion for summary judgment. Plaintiff's complaint, in its entirety, is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

14. Plaintiff does argue that Harcourt Brace's use of progressive discipline and written warnings indicates that he could only be terminated for cause. This argument, however, has already been rejected by the courts, since such a finding would encourage employers to terminate their employees at the first infraction. *See Davis,* 29 Cal.App.4th at 367, 34 Cal.Rptr.2d 438.

15. The Court notes that, even assuming that plaintiff has demonstrated a triable issue of fact as to the existence of an implied-in-fact agreement to terminate only for good case, defendants are still entitled to summary judgment on this claim. As explained above, plaintiff has not produced evidence sufficient to demonstrate retaliation by Harcourt Brace in its employment decisions. Absent such evidence, the Court finds that no reasonable trier of fact could conclude that Harcourt Brace constructively discharged plaintiff in breach of an implied-in-fact contract to terminate only for good cause.