**Regina MADDOCK, on behalf of herself and others similarly situated, Plaintiffs,**

v.

**KB HOMES, INC., Defendant.**

**Case No. CV–06–05241 CAS (JTLx).**

United States District Court, C.D. California, Western Division.

Oct. 18, 2007.

Darren M. Cohen, Elana R. Levine, Eric B. Kingsley, George R. Kingsley, Kingsley and Kingsley, Encino, CA, for Plaintiffs.

Anna-Mary E. Gannon, Janel Royce Ablon, Margaret Hart Edwards, Paul Robert Lynd, Philip Lane Ross, Littler Mendelson, San Francisco, CA, Joshua Z. Feldman, Littler Mendelson, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (filed 09/12/07)

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (filed 09/18/07)

## ORDER DENYING PLAINTIFF'S MOTION TO COMPEL ARBITRATION (filed 09/24/07)

CHRISTINA A. SNYDER, District Judge.

### I. INTRODUCTION

On August 21, 2006, defendant KB Home (erroneously sued as "KB Homes, Inc.") removed plaintiff's first amended complaint from the Los Angeles County Superior Court to this Court, On September 29, 2006, pursuant to stipulation, plaintiff, on behalf of herself and others similarly situated, filed a second amended complaint ("SAC"), alleging claims for (1) unfair business practices, pursuant to Cal. Bus. & Prof.Code § 17200, et seq., premised upon a violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); (2) unpaid overtime pursuant to Cal. Lab.Code §§ 1194, 1199; (3) failure to provide meal breaks in violation of Cal. Lab.Code § 226.7; (4) failure to allow rest breaks in violation of Cal. Lab.Code § 226.7; (5) waiting time penalties pursuant to Cal. Lab.Code § 203; (6) penalties pursuant to Cal. Lab.Code § 2699; and (7) unfair business practices, pursuant to Cal. Bus. & Prof.Code § 17200 et seq., premised upon violations of the California Labor Code. On July 9, 2007, 248 F.R.D. 229 (C.D.Cal.2007), the Court denied plaintiffs motion for class certification.

KB Home is a nationwide seller of homes in community developments. KB Home has several subsidiaries in California, including KB Home Greater Los Angeles, Inc., KB Home Coastal, Inc., KB Home Sacramento, Inc., KB Home South Bay, Inc., and KB Home Central Valley, Inc. The subsidiaries are divided into divisions, and build and sell homes in various KB Home communities. Plaintiff alleges that she was formerly employed as a "commissioned salesperson" or "sales agent" by KB Home Greater Los Angeles, Inc. ("KBLA"), from June 6, 2005, to December 6, 2005. Plaintiff contends that she worked at the sales office in the Wild Rose community, where she gave prospective buyers tours of model homes, and helped buyers purchase homes in the community.

Plaintiff alleges that KB Home improperly classified her as exempt under federal and state labor laws and that KB Home has a consistent policy of failing to pay wages to commissioned salespersons for all hours worked, failing to provide meal and rest breaks, and failing to pay overtime. Plaintiff seeks compensatory damages for unpaid overtime; missed meal and rest periods; penalties pursuant to Cal. Lab Code §§ 203 and 2699; restitution; attorneys' fees; and costs. Plaintiff further seeks a mandatory injunction requiring KB Home to provide plaintiff with proper compensation and breaks. Additionally, pursuant to Cal. Lab.Code § 232(a), plaintiff seeks a mandatory injunction prohibiting KB Home from preventing her from disclosing her salary and commission.

On September 12, 2007, KB Home filed the instant motion for summary judgment. Plaintiff filed an opposition thereto on October 1, 2007. KB Home filed a reply on October 5, 2007.

On September 18, 2007, plaintiff filed the instant motion to amend complaint and to substitute KBLA in place of KB Home as the defendant herein. The proposed third amended complaint ("proposed TAC"), alleges claims against KBLA on her own behalf and on behalf of others similarly situated. The claims against KBLA in the proposed TAC are identical to those alleged against KB Home in plaintiff's SAC, with the exception that it does not allege against KBLA a claim for unfair business practices, pursuant to Cal. Bus. & Prof.Code § 17200, et seq., premised upon a violation of the FLSA. On October 1, 2007, KB Home filed an opposition to plaintiff's motion to amend complaint. On October 10, plaintiff filed a reply.

On October 4, 2007, plaintiff filed a "notice of errata," stating that the proposed TAC was not intended to include class allegations against KBLA. Plaintiff submitted as an exhibit to the notice of errata a modified proposed TAC that alleges identical individual claims against KBLA in place of the class claims alleged against KBLA in the proposed TAC. On October 9, 2007, KB Home filed an opposition to and motion to strike plaintiff's notice of errata. On October 10, 2007, plaintiff filed an opposition to KB Home's motion to strike plaintiff's notice of errata.

On September 24, 2007, plaintiff filed the instant motion to compel arbitration. KB Home filed an opposition to plaintiff's motion to compel arbitration on October 1, 2007. On October 4, 2007, plaintiff filed a reply thereto.

The Court heard oral argument on October 15, 2007, and took these motions under submission. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■■■ If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pacific Corp.*, 114 F.3d 898, 902 (9th Cir.1997).

■■■ In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W.*

*Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### B. Leave to Amend

■ Generally, Federal Rule of Civil Procedure 15(a) liberally permits amendments of pleadings. However, where a pretrial scheduling order has established a timetable for amending the pleadings, a request to amend the pleadings made after the deadline has expired is properly addressed pursuant to Federal Rule of Civil Procedure 16. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294 (9th Cir.2000) (*citing Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607–09 (9th Cir.1992)). Pursuant to Federal Rule of Civil Procedure 16(b), a plaintiff seeking to amend his complaint must show good cause for not having amended his complaint prior to the deadline set forth in the scheduling order. *Id.* The Ninth Circuit has explained that "[t]his standard 'primarily considers the diligence of the party seeking the amendment.'" *Id.* (*quoting Johnson,* 975 F.2d at 609).

### III. DISCUSSION

#### A. Summary Judgment

KB Home's motion for summary judgment is predicated on its assertion that KB Home was never plaintiff's employer, and therefore that KB Home is not properly a party defendant in this case. Instead, KB Home contends that plaintiff's sole employer was KBLA. In response, plaintiff maintains that there remain genuine issues of material fact in dispute as to whether KB Home was her employer or should be otherwise liable on an alter ego theory. As such, plaintiff argues, summary judgment should not be granted.

#### 1. Whether KB Home Was Plaintiffs Employer Under the FLSA

##### a. Considerations in Determining Whether a Party Is a Joint Employer Under the FLSA

In order for the FLSA to apply to the instant case, KB Home must be plaintiff's "employer" within the meaning of the FLSA. This determination is a question of law. *Bonnette v. Cal. Health and Welfare Agency,* 704 F.2d 1465 (9th Cir.1983), *disapproved of on other grounds in Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). Two or more employers may jointly employ an employee and be individually liable under the FLSA. *See* 29 C.F.R. 791.2(a).

The Ninth Circuit has stated that the concept of joint employment should be defined expansively under the FLSA. *Torres–Lopez v. May,* 111 F.3d 633, 639 (9th Cir.1997). On the other hand, "Taken literally and applied in this context [too expansive a definition of 'employer'] would make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages or other employees. It makes more sense, ..., to interpret the language as intended to prevent

employers from shielding themselves from responsibility for the acts of their agents." *Baird v. Kessler*, 172 F.Supp.2d 1305, 1311 (E.D.Cal.2001) (*quoting Donovan v. Agnew*, 712 F.2d 1509, 1513 (1st Cir.1983)).

■ To determine whether a defendant is a joint employer, courts look to the "economic reality" behind the relationship and typically consider the following four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[1] *Bonnette*, 704 F.2d at 1470. "[J]oint employment will generally be considered to exist when (1) the employers are not 'completely disassociated' with respect to the employment of the individuals and (2) where one employer is controlled by another or the employers are under common control." *Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir.2003) (*citing* 29 C.F.R. § 791.2(b)).

■ Courts have also considered factors derived from the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–1872, in determining whether a joint employment relation exists, including the following:

(1) whether the work was a "specialty job on the production line;"

(2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without "material changes;"

(3) whether the "premises and equipment" of the employer are used for the work;

(4) whether the employees had a "business organization that could or did shift as a unit from one [worksite] to another;"

(5) whether the work was "piecework" and not work that required "initiative, judgment or foresight;"

(6) whether the employee had an "opportunity for profit or loss depending upon [the alleged employee's] managerial skill;"

(7) whether there was "permanence [in] the working relationship;" and

(8) whether "the service rendered is an integral part of the alleged employer's business."

*Torres–Lopez v. May*, 111 F.3d 633, 640 (9th Cir.1997) (citations omitted); *see Zhao v. Bebe Stores, Inc.*, 247 F.Supp.2d 1154, 1157–61 (C.D.Cal.2003) (applying the *Bonnette* and *Torres–Lopez* factors in determining whether the defendant was a joint employer under the FLSA); *accord Flores v. Albertson's Inc.*, 2003 WL 24216269, *2–5, 2003 U.S. Dist. LEXIS 26857, *8–18 (C.D.Cal.2003). All of these factors are meant to guide a court's analysis, and the ultimate determination must be based "upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *Bonnette*, 704 F.2d at 1470 ("The four factors . . . provide a useful framework for analysis . . . but they are not etched in stone and will not be blindly applied.").

The parties have not addressed the *Torres–Lopez* factors in their briefs, focusing instead on the four *Bonnette* factors. On the record before the Court, it appears that the *Torres–Lopez* factors are irrelevant or, at best, carry neutral weight on

---

1. Contrary to plaintiff's unsupported assertion, the "economic reality" test is not disjunctive. As the Bonnette court noted, courts have considered these factors "[i]n varying combinations" to determine whether a joint employment relationship exists. *Bonnette*, 704 F.2d at 1470.

the question of whether KB Home was plaintiff's joint employer. The *Bonnette* factors are more pertinent to the determination of the economic reality of the employer-employee relationship in this case. The Court now turns to the consideration of these factors as they bear on the evidence presented by the parties.

### b. Evidence Bearing on the Bonnette Factors

■ KB Home argues that undisputed evidence demonstrates that the first three factors of the "economic reality" test have not been met. As to the first factor, KB Home asserts that KB Home's subsidiaries, including KBLA, had the power to hire and fire its agents. Raae–Nielsen Depo. at 32:25–33:4 (statement by the Vice President of Sales and Marketing of the Inland Valley division of KBLA that she is authorized to hire sales agents and is not required to clear hiring decisions); Abboud Depo. at 48:18–49:1 (statement by the Director of Sales for the Orange County division of KB Home Coastal, Inc. that he recruits, interviews, and hires sales agents). Further, KBLA personnel made the final decision to hire plaintiff. Perez Decl. at ¶ 2. Plaintiff does not dispute that the first factor has not been met.

As to the third factor, KB Home maintains that the subsidiaries determined the rate of compensation for their sales agents. Burnstein Depo. at 63:10–64:3, 65:4–18, 66:2–24 (stating that sales agents are paid a commission based upon a percentage of the general revenue of a community, which is broken down to a per unit amount, and varies by community and by sales agent). According to KBLA's Vice President of Sales and Marketing, she decided what plaintiff would be paid, and KB Home "had no role" in determining what plaintiff was paid. Perez Decl. at ¶ 2. Plaintiff does not dispute that the third factor has not been met.

The parties agree that the fourth factor—the maintenance of employment records—is satisfied in that KB Home maintains a database of information on employees of KB Home subsidiaries and KBLA uses KB Home's shared payroll services. The Court is persuaded by KB Home's argument, however, that these facts alone are as a matter of law insufficient to establish that KB Home was plaintiff's employer under the economic reality test. *See Catani v. Chiodi,* 2001 WL 920025, *7 (D.Minn.2001) (holding that the fact that the defendant maintained employment records was insufficient to establish that she was a joint employer under the economic reality test).

Thus, the crux of the matter is whether the second factor in the economic reality test—whether KB Home supervised and controlled plaintiff's work schedule or conditions of employment—has been satisfied. *Cf. Wheeler v. Hurdman,* 825 F.2d 257, 270 (10th Cir.1987) (applying a version of the economic reality test and noting, "the extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor to review."). The Court finds and concludes that this factor has not been satisfied.

As to *Bonnette*'s second factor, KB Home asserts that its subsidiaries controlled the work schedules of its sales agents and that KBLA set plaintiff's schedule. Perez Decl. at ¶ 2 (KB Home had no role in deciding plaintiffs work hours); Burnstein Depo. at 44:22–45:7 (the regional sales manager typically sets the schedules for sales agents); Coykendall Depo. at 37:24–38:11 (sales agents work with regional sales managers in setting their schedules). With regard to the question of KB Home's control of plaintiff's conditions of employment, KB Home as-

serts that KBLA determined and administered what training would be given to employees. Perez Decl. at ¶ 5. Additionally, KB Home points to salesperson employment agreements that plaintiff signed with KBLA that expressly provide the terms and conditions for plaintiff's employment with KBLA.

In response, plaintiff argues that the evidence that KB Home directed and provided training materials, procedures, and guidelines to sales agents at its subsidiaries, including KBLA, demonstrates that KB Home supervised and controlled her employment conditions. Plaintiff notes that uniform training materials and policies—including the ethics policy and a "structured selling document"—were conveyed to sales agents via KB University, KB Home's online training program, Raae–Nielsen Depo. at 60:16–24; Mayhue Depo. at 13:7–10. Plaintiff further notes that the Vice President of Sales and Marketing for KB Home's Riverside Division, Daniel Loth, confirmed that he sometimes receives new procedures from KB Home. Loth Depo. 28:11–18. Loth also testified that KB Home provides him with information, the nature of which Loth could not recall, that is then sometimes presented at meetings with sales agents. Loth Dep. at 29:2–13. Plaintiff cites to the deposition of Vanessa Linn, who testified that, as Vice President of Sales for KB Home Coastal, Inc., she sometimes received from KB Home information to pass on to the sales agents, such as "hints on how to sell" or new training. Linn Depo. at 27:10–28:5. However, Linn stated that she did not have to pass on this information to the sales agents. Linn Depo. at 27:18–19.

Plaintiff further notes that Robin Stewart, Regional Human Resources Director for KB Home, testified that the duties of this position included providing "strategic human resource guidance, direction, and support to division presidents, region manager [sic] and their leadership team." Stewart Depo. at 11:17–12:3. Plaintiff also highlights Stewart's testimony that Stewart works with personnel from the divisions to complete a "strategic plan" for each division. *Id.* at 36:5–9. This process involves the completion of numerous forms, including an "organizational chart, development plans, [a] performance summary, [a] succession planning document, a performance potential grid, [and] a business priorities chart." *Id.* at 34:19–35:5.[2]

### c. Analysis

In finding that the second *Bonnette* factor has been satisfied, courts have required a showing of facts demonstrating a greater level of control on the part of an alleged joint employer than that which plaintiff has presented. In *Bonnette*, the court found that the control factor had been satisfied by the showing that the defendants, though not responsible for the day-to-day supervision of the plaintiffs, made the final determination as to the number of hours the plaintiffs would work and exactly what tasks they would perform, and where the defendants would intervene when problems arose between the plaintiffs and their employers. *Bonnette v. Cal. Health and Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir.1983).

In *Tumulty v. Fedex Ground Package Svs.,* 2005 U.S. Dist. LEXIS 26215 (D.Wash.2005), the court held that *Bon-*

---

**2.** Plaintiff further asserts that KB Home gives sales agents in California "identical paperwork to be completed ... (which is created and generated by KB), and consistent daily and weekly reports to confirm standardization in the operation of all community sales offices, and to confirm company-wide goals."

PL's Opp. at 4. While plaintiff states that these assertions are supported by the deposition testimony of Vanessa Linn, neither the portion of Linn's testimony to which plaintiff cites, nor the remainder of the record, appears to support these assertions.

*nette*'s "control" factor had been met and that the defendant was the joint employer of the plaintiff class of delivery drivers. The court noted that the defendant's managers held weekly meetings with the plaintiffs, that these managers would comment on the plaintiffs' uniforms and check to see if they delivered packages, and that the defendant would assign the plaintiffs extra work, order them to drive different routes, and suggest how many hours per day it wanted the plaintiffs on the road. *Id.* at 11. On these facts, the court concluded, "while individually the uncontested actions may not support a 'joint employment' relationship, taken together they demonstrate that [the defendant] exercised significant control over the Drivers daily routine." *Id.* at 12.

By contrast, in *Zhao v. Bebe Stores, Inc.*, 247 F.Supp.2d 1154 (C.D.Cal.2003), in concluding that the defendant was not liable under the FLSA as a joint employer, the court found that there was no showing that the defendant controlled working conditions at the plaintiffs' work facility. The court noted that the defendant provided on-site personnel to ensure that the defendant received quality goods from plaintiff's employer and to handle quality control problems there. *Id.* at 1160. Nonetheless, the court found that the defendant did not control plaintiffs work conditions because the employer's supervisors, not the defendant's personnel, were primarily responsible for the day-to-day management of the employees in that it was they who managed employee assignments, shifts, and work hours. *Id.*

Unlike the facts present in *Bonnette* and *Tumulty*, plaintiff has failed to show that KB Home has controlled plaintiff's employment conditions. In *Bonnette, Tumulty*, and *Zhao*, the determination of whether the "control" factor had been met turned in significant part on whether it had been shown that the alleged joint employers determined the number of hours that the plaintiffs worked. Here, as in *Zhao*, and unlike *Bonnette* and *Tumulty*, plaintiff has pointed to no evidence to rebut KB Home's showing that it was KBLA, not KB Home, that controlled plaintiff's work hours.

Additionally, *Bonnette, Tumulty*, and *Zhao* emphasized the extent to which the alleged joint employers determined the nature of the plaintiffs' work. While in *Bonnette* and *Tumulty*, the determination that the defendants were joint employers rested, in part, on the showing that they determined the plaintiffs' work duties or how the plaintiffs were to do their jobs from day-to-day, in this case, plaintiff has not adduced facts showing that KB Home enjoyed or exercised any such level of control over the nature of plaintiff's work. Rather, plaintiff has shown only that KB Home, from time to time, conveyed training materials, procedures, and other information to management personnel in its subsidiaries, and that these personnel would sometimes pass along this information to sales agents such as plaintiff. Plaintiff has made no showing that the subsidiaries were required by KB Home to pass these materials along to their sales agents.[3] In fact,

---

**3.** The Court notes the deposition testimony of Marc Burnstein, Vice President of Sales and Marketing of KB Home South Bay, Inc., that "everybody within the company is expected to at least understand and take advantage of the material that is [on the KB University website]." Burnstein Depo. at 24:13–18. Plaintiff does not rely on this testimony. Even if one assumes that Burnstein meant that KB

Home expected its agents to use the KB University website, it would still be far from clear whether this "expectation" amounted to a directive from KB Home. Moreover, it does not appear that a directive to "understand and take advantage of" the KB University materials could ever determine the day-to-day working conditions of individual sales agents such as plaintiff

one deponent, Vanessa Linn, specifically testified that she was not required to do so. See also Mayhue Decl. ¶ 6 (statement by the Vice President of KB University that KB University does not have any control over the day-to-day work of any salesperson employed by KB Home's subsidiaries).

Even if it were shown that KB Home mandated the dissemination of these training materials to sales agents such as plaintiff, it is doubtful that this would suffice to establish the requisite level of control called for under *Bonnette*. Cf. *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir.1991) (in a case involving claims under Title VII, that franchisor provided training for franchise employees, stringently controlled its franchisee's operations, and conducted frequent inspections did not suffice to establish control under the four factor economic reality test). Plaintiff has provided no evidence that the training provided to sales agents such as plaintiff effectively controlled plaintiffs working conditions for the purposes of the economic reality test.[4]

Plaintiff relies on the statement by KB Home's regional human resources director that his job duties included providing "strategic human resource guidance direction, and support to division presidents, region manager [sic] and their leadership team," as well as his reference to the "strategic plan" that he completes in conjunction with various divisions. These facts perhaps support the assertion that KB Home possesses influence over management personnel at KB Home's subsidiaries. They do not permit the further inference, however, that KB Home supervised and controlled the scheduling or working conditions of sales agents such as plaintiff.

As in *Zhao*, the undisputed evidence shows that it was plaintiffs supervisors at KBLA, not KB Home, who were responsible for the day-to-day management of their employees. Plaintiff has produced no evidence to refute KB Home's assertions that KBLA, not KB Home, supervised and determined the duties of their sales agents in accordance with the salesperson employment agreements signed by plaintiff. As such, the Court concludes that the second factor in the *Bonnette* test weighs in favor of KB Home's position, as do the first and third factors. The overall circumstances thus indicate that, for the purposes of the FLSA, the economic reality of the situation was that KBLA was plaintiffs employer and KB Home was not. Consequently, plaintiff cannot maintain an action against KB Home under the FLSA on the theory that KB Home was her joint employer.

## 2. Whether KB Home Was Plaintiff's Employer Under California Law

Plaintiff's state law claims are predicated on the showing that there was an employer-employee relationship between

---

4. In support of her argument that KB Home controlled plaintiffs work conditions, plaintiff submits two documents the "structured selling overview" document and the "Kaufman and Broad Home Policies and Procedures Manual"—both of which, according to plaintiff, KB Home provides to all KB Home subsidiaries. Because these documents bear dates of 2003 and 1997, respectively, and therefore, precede the date on which plaintiffs employment commenced, their relevance to plaintiff's argument is tenuous. Additionally, the structured selling overview document, which includes steps and tips for selling a home, as well as "action items" for the implementation of each step of the sale, appears to be more of an informational source, rather than a uniform, comprehensive training program and contains no information on the scheduling of sales agents. The Kaufman and Broad Home Policies and Procedures Manual does not contain information pertaining to the scheduling or work conditions of sales agents. Accordingly, these documents do not advance plaintiff's argument.

plaintiff and KB Home. Under California law, only an "employer" is liable for failing to provide an employee with meal or rest periods. Cal. Labor Code § 226.7. Similarly, only an "employee" may bring an action to recover unpaid overtime compensation. Cal. Labor Code § 1194. Additionally, plaintiff's claim for unfair competition pursuant to Cal. Bus. & Prof.Code § 17200 is grounded in plaintiffs allegations that KB Home violated Cal. Labor Code § 90.5(a), pertaining to California's policy of vigorously enforcing minimum labor standards for employees, and Cal. Labor Code § 232, which prohibits employers from requiring that their employees refrain from disclosing their wages.

The California Supreme Court has suggested that the federal definition of "employer" is inapplicable under California law. *See Reynolds v. Bement,* 36 Cal.4th 1075, 1088, 32 Cal.Rptr.3d 483, 116 P.3d 1162 (2005) ("where the language or intent of state and federal labor laws substantially differ[s], reliance on federal regulations or interpretations to construe state regulations is misplaced. While the FLSA contains an express definition of 'employer,' section 1194 [of the California Labor Code] does not."); *Singh v. 7–Eleven, Inc.,* 2007 WL 715488, *6 (N.D.Cal. Mar. 8, 2007). Thus, a different test must be applied.[5]

▋ The parties focus their arguments on the "integrated enterprise" test. *See Laird v. Capital Cities/ABC, Inc.,* 68 Cal. App.4th 727, 737, 80 Cal.Rptr.2d 454 (1998). Under this test, in determining whether entities are liable as a single employer or an integrated enterprise, the following four factors are considered: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Id.* This test has most often been applied in the context of claims arising under Title VII and the California Fair Employment and Housing Act ("FEHA"). *See e.g. Morgan v. Safeway Stores, Inc.,* 884 F.2d 1211, 1213 (9th Cir. 1989) (applying the test's factors to determine whether businesses should be treated as a single employer for Title VII purposes); *Laird,* 68 Cal.App.4th at 737, 80 Cal.Rptr.2d 454 (applying the test in adjudicating claims arising under FEHA). Courts, however, have also applied this test in the context of claims arising from alleged violations of the California Labor Code. *See Huse v. Auburn Honda,* 2005 WL 1398521, *3, 2005 U.S. Dist. LEXIS 45494, *8 (E.D.Cal.2005) (employing the integrated enterprise test to determine whether a defendant was an employer within the meaning of the California Labor Code); *Serrano v. 180 Connect, Inc.,* 2006 WL 2348888, *2, 2006 U.S. Dist. LEXIS 61035, *8 (N.D.Cal.2006) (employing the integrated enterprise test in an action arising from alleged California Labor Code violations), *rev'd on other grounds* 478 F.3d 1018 (9th Cir.2007).

▋ In applying the integrated enterprise test, the Court notes *Laird*'s observations that

---

5. Another decision from this Circuit applied the economic reality test, discussed supra, to determine whether the defendant was liable as a joint employer for alleged violations of the California Labor Code. *Rios v. Airborne Express Inc.,* 2006 WL 2067847, *1–2, 2006 U.S. Dist. LEXIS 54570, *4–5 (N.D.Cal.2006). The *Rios* court did so in reliance on *Bureerong v. Uvawas,* 922 F.Supp. 1450 (C.D.Cal.1996), which found that California courts would likely adopt the federal FLSA's broad definition

of "employment" and would likely focus on the "economic realities" of the relationship. *Bureerong,* 922 F.Supp. at 1470. The California Supreme Court's subsequent language in *Reynolds,* casting doubt on these views, suggests that the economic reality test does not provide the proper analysis for determining whether KB Home was plaintiff's employer within the meaning of the California Labor Code.

[a]n employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law. Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result. In particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees.

*Laird,* 68 Cal.App.4th at 737–38, 80 Cal. Rptr.2d 454 (internal citations omitted).

■■■ KB concedes factors two and four, but argues that these factors are of diminished significance. As to the second factor—common management—KB Home concedes that "5 or 6" KBLA officers are also officers of KB Home, but nonetheless argues that this is of little consequence because, according to KB Home, there is no evidence that any of these officers controls day-to-day employment decisions at KBLA. As to the fourth factor—common ownership—KB Home concedes that it owns KBLA, but argues that this fact is not dispositive in light of *Laird*'s holding that "common ownership or control alone is never enough to establish parent liability." *Laird,* 68 Cal.App.4th at 738, 80 Cal. Rptr.2d 454.

The parties dispute whether the factors one and three of the integrated enterprise test—relating to interrelation of operations and centralized control of labor relations, respectively—have been met.

### a. Interrelation of Operations

■■■ "To make a sufficient showing of 'interrelation of operations' on summary judgment, the plaintiff must do more than merely show that officers of the subsidiary report to the parent corporation or that the parent benefits from the subsidiary's work. Since these facts exist in every parent-subsidiary situation, such a showing would create a triable issue of material fact in every case." *Laird,* 68 Cal.App.4th at 738, 80 Cal.Rptr.2d 454. "What the plaintiff must show, rather, is that the parent has exercised control 'to a degree that exceeds the control normally exercised by a parent corporation.'" *Id.* (*quoting Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993)).

In support of her contention that she has established the interrelated operations prong of the integrated enterprise test, plaintiff asserts that KB Home, not KBLA, issued her paychecks. Plaintiff asserts that KB Home provides unspecified information to its subsidiaries for their sales meetings. Plaintiff further asserts that KB Home's structured selling overview is given to all sales agents through KB University, KB Home's virtual training program. Additionally, plaintiff points to evidence that employees in training receive a "binder" produced by KB Home that contains "links" to the KB University website. Coykendall Depo. at 26:15–27:3. Plaintiff also maintains that information about new employees is sent to KB Home.[6]

---

**6.** Plaintiff's assertion that KB Home sends "many directives" to division heads, who in turn send the directives to sales agents within the division, is not supported by the evidence. To bolster this assertion, plaintiff cites to vague testimony from Diana Coykendall, Director of Sales for the KB Home Central Valley division. During this deposition, after Coykendall's statement that KB Home does *not* direct sales agents to view the KB University website, plaintiff's counsel asked Coykendall, "[i]s that because the directives come from corporate through division? Is it because the people in charge at your division are the ones that determine what the sales reps should use?" Coykendall answered in response, "[t]hey are sent to us and we send it to them." Even if one reads this testimony in the light most favorable to plaintiffs position, it is not apparent that it has any relevance to whether KBLA's operations are interrelated with KB Home's because Coykendall's testi-

KB Home argues in response that plaintiff has not shown that there is any interrelatedness of operations beyond that which is normal between a parent and a subsidiary. KB Home further argues that plaintiff has only adduced evidence that relates to conditions at KB Home subsidiaries other than KBLA, such that plaintiff has failed to demonstrate any interrelatedness between KBLA and KB Home.

In *Laird*, the court held that the interrelation of operations prong had not been satisfied where the plaintiff failed to show that the defendant parent corporation exercised greater control over the subsidiary's operations than that which a parent would normally exercise over its subsidiary. *Laird*, 68 Cal.App.4th at 739, 80 Cal.Rptr.2d 454. The court noted that the plaintiff could have met this standard, but failed to do so, by showing that the defendant kept the subsidiary's books, issued its paychecks, or paid its bills, or that the two companies had shared employees, headquarters, or office space. *Id.* The court further found that the plaintiff's showing that the defendant publicly took credit for the subsidiary's operations and that the subsidiary's managers instructed their employees to use the defendant's name when dealing with the public did not suffice to establish the interrelatedness factor. *Id.*

In support of her contention that KB Home issued her paychecks, plaintiff provides an earning statement that she received, which bears the KB Home logo. Maddock Depo. at Ex. 24. KB Home argues that the presence of the KB Home logo on the earnings statement does not establish that KB Home issued her paychecks. KB Home directs the Court's attention to another document, a "salesperson commission request statement," that also bears the KB Home logo, although it

was allegedly issued to plaintiff by KBLA. Perez Decl. at ¶¶ 2–3, Ex. 1 (submitted with Def's Opp. to Pl.'s Mot. to Amend). Thus, it is not clear that the earning statement proffered by plaintiff is probative as to whether KB Home issued plaintiff's paychecks. Plaintiff provides no other evidence; such as deposition testimony, declarations, or financial records; to support her assertion that KB Home issued her paychecks. Although KB Home concedes that it provided payroll processing services to its subsidiaries, this does not establish that KB Home financed the paychecks for its subsidiaries' employees. Plaintiff, therefore, has not provided an evidentiary foundation for her assertion that KB Home issued her paychecks.

Plaintiff offers no other evidence tending to show interrelation between KB Home and KBLA. Plaintiff's evidence that KB Home provides certain training materials for use by its subsidiaries falls short of establishing that KB Home exercises abnormal influence over the personnel decisions of these subsidiaries. Moreover, KB Home's retention of certain payroll and personnel information relating to its sales agents does not indicate a degree of control over its subsidiaries that would constitute interrelation of operations. Plaintiff has pointed to none of the sort of evidence that indicates this heightened level of control. Accordingly, the interrelation of operations factor of the integrated enterprise test has not been satisfied.

**b. Centralized Control of Labor Relations**

 Courts consider the four factors of the integrated enterprise test together, bug they often deem the third factor, centralized control of labor relations, the most important. *Laird*, 68 Cal.

---

mony relates only to practices at her division, KB Home Central Valley. Plaintiff provides no facts that indicate that KBLA employs any

such practices. Accordingly, plaintiff's assertion does not find support in the record.

App.4th at 738, 80 Cal.Rptr.2d 454. "The critical question is 'what entity made the final decisions regarding employment matters related to the person claiming discrimination?' A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong. To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary." *Id.* (*quoting Frank v. U.S. West. Inc.,* 3 F.3d 1357, 1363 (10th Cir.1993)); *Cellini v. Harcourt Brace & Co.,* 51 F.Supp.2d 1028, 1034 (S.D.Cal.1999) ("although a court must consider each of the factors [in the integrated enterprise test], the critical inquiry requires an examination of which entity made the final decisions regarding employment matters."); *cf. Singh v. 7-Eleven, Inc.,* 2007 WL 715488 *7 (N.D.Cal. 2007) ("California courts have consistently recognized that the principle test for determining employment relationships is the right of control over the manner or means of accomplishing the result desired.").

In support of her contention that KB Home had centralized control of labor relations at KBLA, plaintiff points to the depositions of Vanessa Linn, Vice President of Sales for KB Home Coastal, Inc.; Daniel Loth, Vice President of Sales and Marketing for KB Home's Riverside Division; and Robin Stewart, Regional Human Resources Director for KB Home. Linn testified that she sometimes received from KB Home information to pass on to the sales agents, such as "hints on how to sell" or new training. Linn Depo. at 27:10–28:5. Loth, confirmed that he sometimes receives new procedures from KB Home. Loth Depo. at 28:11–18. Loth also testified that KB Home provides him with information, the nature of which Loth could not recall, which he was instructed to present at meetings. Loth Dep. 29:2–13. Robin Stewart testified that the duties of the regional human resources director for KB Home include providing "strategic human resource guidance, direction, and support to division presidents, region manager [sic] and their leadership team." Stewart Depo.. at 11:17–12:3. Plaintiff also highlights Stewart's testimony that he works with personnel from the divisions to complete a "strategic plan" for each division. *Id.* at 36:5–9. This process involves the completion of numerous forms, including an "organizational chart, development plans, [a] performance summary, [a] succession planning document, a performance potential grid, [and] a business priorities chart." *Id.* at 34:19–35:5.

In *Cellini v. Harcourt Brace & Co.,* 51 F.Supp.2d 1028 (S.D.Cal.1999), the court found that the control prong of the integrated enterprise test had not been satisfied because the plaintiff had produced no evidence that the defendant parent corporation exercised control over its subsidiary's employment decisions. *Id.* at 1035. The court reached this determination in spite of the showing that the defendant issued a code of conduct that applied to the subsidiary's employees and even though the defendant provided employee benefits programs and sexual harassment seminars to these employees. *Id.* at 1034. Because the evidence demonstrated that the subsidiary's day-to-day employment decisions—such as hiring, performance evaluations, and work assignments—were conducted by the subsidiary without the defendant's involvement, the court held that the control factor had not been met. *Id.* at 1034.

Here, plaintiff has not produced evidence to establish that KB Home exercised or enjoyed the sort of day-to-day control over KBLA's employment decisions that would satisfy the control prong of the integrated enterprise test. Plaintiff's argument that KB Home controlled KBLA's employment decisions rests on evidence that KB Home disseminated training materials to its subsidiaries and their

sales agents and provided strategic human resource guidance, direction, and support to the management of these subsidiaries. As in *Cellini*, where the facts that the parent provided to its subsidiary's employees a code of conduct and sexual harassment seminars did not establish that the parent controlled the personnel decisions of the subsidiary, so too, the evidence that KB Home provided training materials to sales agents such as plaintiff does not establish that KB Home controlled KBLA's personnel decisions. Furthermore, as discussed supra in the Court's discussion of the economic reality test, the evidence that KB Home provided unspecified guidance to management personnel at its subsidiaries and helped them to complete a "strategic plan" does not demonstrate that KB Home had any involvement in the day-to-day personnel decisions of these subsidiaries. *Cf. Lockard v. Pizza Hut*, 162 F.3d 1062, 1071 (10th Cir.1998) (that franchisee utilized policies promulgated by the franchisor did not establish that the franchisor had centralized control of labor relations where no evidence indicated what role, if any, the franchisor played in implementing or effecting these policies). Because the record contains no evidence that KB Home had such influence, the Court finds and concludes that the third factor in the integrated enterprise test has not been met.

### c. Conclusion

Plaintiff has failed to establish the first factor and the paramount third factor of the integrated enterprise test. Given the strong presumption under California law that a parent company is not the employer of its subsidiary's employees, the Court concludes that these deficiencies are fatal to plaintiff's integrated enterprise theory of liability. Plaintiff cannot maintain an action against KB Home for violations of the California Labor Code on the theory that KB Home and KBLA constituted a single employer or an integrated enterprise.

### 3. Plaintiff Has Not Shown That KB Home Is The Alter Ego of KBLA

■ In considering whether to pierce the corporate veil in a suit arising under federal law, a court must apply federal substantive law, though it may look to state law for guidance. *Bd. of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir.1989) (*citing Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1109 (9th Cir.1979)). The Ninth Circuit has stated that "[a]n alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001). "To demonstrate that the parent and subsidiary are 'not really separate entities' and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice?' " *Id.; quoting Am. Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.1996). The first prong requires a showing that the parent controls the subsidiary "to such a degree as to render the latter the mere instrumentality of the former." *Doe*, 248 F.3d at 926.

■ Under California law, "[w]hether alter ego applies is a question of fact which necessarily varies according to the circumstances of each case." *Inst. of Veterinary Pathology, Inc. v. Cal. Health Labs., Inc.*, 116 Cal.App.3d 111, 119, 172 Cal.Rptr. 74 (1981). California's alter ego standard is similar to the federal standard: "[t]he trier of fact must consider whether (1) such a unity of interest in ownership exists so as to dissolve the separate corporate personalities of the parent and the subsidiary, relegating the latter to

the status of merely an instrumentality, agency, conduit or adjunct of the former, and (2) an inequitable result will occur if the conduct is treated as that of the subsidiary alone." *Id.* In other words, the plaintiff must show "specific manipulative conduct by the parent toward the subsidiary which relegates the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former." *Laird v. Capital Cities/ABC, Inc.,* 68 Cal.App.4th 727, 742, 80 Cal.Rptr.2d 454 (1998) (*quoting Veterinary Pathology,* 116 Cal.App.3d at 119–120, 172 Cal.Rptr. 74).

Plaintiff argues that KBLA is KB Home's alter ego, such that KB Home is liable for the federal and state law violations upon which plaintiff's claims are premised. First, plaintiff argues that there is a unity of interest between KBLA and KB Home in that KB Home directs KBLA "in regards to its regular operations," KBLA "could not and would not exist without constant oversight from [KB Home]," and KB Home's California divisions take "much guidance" from KB Home. Pl.'s Opp. at 13–14. Plaintiff asserts that KB Home provides uniform training, policies, and procedures to all of its employees; that identical employment agreements govern the employment of all sales agents; that KB Home and KBLA share management personnel; and that KB Home and its subsidiaries share payroll services, employee records and other information. Plaintiff does not cite to evidence to support these assertions. She appears to rely on substantially the same evidence that she relies upon to argue that KB Home was a joint employer and that KB Home and KBLA were an integrated enterprise.

Second, plaintiff argues that because KB Home created the "unlawful policies" that are at the core of plaintiffs claims, it would be unjust for KB Home to escape liability for the harm that these policies caused.

Plaintiff has not satisfied either prong of the alter ego test. First, plaintiff has not shown a unity of interest between KB Home and KBLA. In arguing that the alter ego doctrine applies, plaintiff relies almost entirely on evidence that the Court has already found insufficient to meet the "less exacting integrated enterprise test." *See Laird,* 68 Cal.App.4th at 742, 80 Cal. Rptr.2d 454. Similarly, as discussed supra, plaintiff has not shown that KB Home controlled KBLA's internal affairs or daily operations, much less that KBLA is a mere instrumentality of KB Home. *See Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir.2001), Moreover, though plaintiff notes that KB Home and KBLA have common directors, this does not necessarily imply that there is a unity of interest. *See Instit. of Veterinary Pathology, Inc. v. Cal. Health Labs., Inc.,* 116 Cal.App.3d 111, 120, 172 Cal.Rptr. 74 (1981) ("Interlocking directorates ... is not, in and of itself, sufficient without direct evidence of specific manipulative conduct to warrant the piercing of the corporate veil."). Plaintiff also notes that KB Home and KBLA have designated the same agent for service of process, but this fact, without more, does not establish a unity of interest. Accordingly, plaintiff has failed to satisfy the first prong of the alter ego standard, which suffices to foreclose her argument that KBLA is the alter ego of KB Home.

Second, plaintiff has not demonstrated that fraud, injustice, or some other inequity would result if the corporate veil is not pierced. Plaintiff contends that KB Home should not be allowed to escape liability because it created the policies that led to plaintiff's injuries. Plaintiff alleges claims for missed meal and rest breaks, unpaid overtime, and for being prevented from disclosing her wages. However, plaintiff has adduced no evidence that KB Home's policies caused these harms to plaintiff. Consequently, there is no basis for plain-

tiffs contention that fraud, injustice, or inequity would result unless the corporate veil is pierced. The second requirement of the alter ego doctrine has not been satisfied.

Having satisfied neither of the required prongs of the alter ego standard, plaintiff's alter ego theory must fail. Therefore, plaintiff may not hold KB Home liable for her claims under an alter ego theory.

### 4. Conclusion

As discussed supra, plaintiff has not shown that KB Home was her employer under federal or California law. Additionally, plaintiff has not demonstrated KB Home's liability for her claims under an alter ego theory. Plaintiff has raised no other bases for KB Home's liability. Accordingly, the Court GRANTS KB Home's motion summary judgment.

### B. Leave to Amend

▮ Plaintiff moves for leave to file a third amended complaint alleging claims against KBLA, rather than KB Home. Except in two respects, the claims in plaintiff's proposed third amended complaint ("proposed TAC") are identical to those alleged in the second amended complaint ("SAC"). First, the claims differ in that they are brought in her individual capacity, rather than as class claims.[7] Second, in the proposed TAC, plaintiff does not allege a claim for unfair business practices, pursuant to Cal. Bus. & Prof.Code § 17200, et seq., premised upon a violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.[8]

KB Home argues that, pursuant to Federal Rule of Civil Procedure 16(b), plaintiff

---

7. Along with her motion to amend complaint, plaintiff initially submitted a proposed TAC that alleged class claims against KBLA. After defendant filed its opposition to the motion to amend complaint, plaintiff filed, on October 4, 2007, a "notice of errata," stating that she had mistakenly submitted a proposed TAC that alleged class claims. Plaintiff attached as an exhibit to this notice of errata a modified proposed TAC that alleged claims against KBLA in plaintiff's individual capacity in place of the class claims. On October 9, 2007, KB Home filed a so-called opposition to and motion to strike plaintiff's notice of errata. On October 10, 2007, plaintiff filed an opposition to KB Home's motion to strike plaintiff's notice of errata.

KB Home argues that the Court should deem plaintiff's modified proposed TAC alleging claims in her individual capacity a nullity because plaintiff submitted it in an improper attempt to avoid the effect of arguments that KB Home set forth in its opposition to plaintiff's motion to amend complaint. KB Home further argues that it would be prejudiced were the Court to give effect to plaintiff's modified proposed TAC because it is essentially a new motion to file an amended complaint as to which KB Home did not receive 24 days' notice, as required under Local Rule 6–1.

While it is mindful of KB Home's concerns, the Court is not convinced that plaintiff filed her notice of errata in bad faith or that KB Home will be unduly prejudiced if it considers plaintiff's modified proposed TAC. The Court shall consider the proposed TAC that alleges claims against KBLA in plaintiff's individual capacity in determining whether to grant the instant motion to amend complaint.

8. Granting plaintiff's motion for leave to file an amended complaint so as to remove the sole federal claim in the instant action would not deprive this Court of subject matter jurisdiction. "If a claim 'arising under' federal law existed at the time of removal, the federal court has jurisdiction to adjudicate even though the federal claim has been dropped from the case and only state law claims remain." Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 2:1067 (The Rutter Group 2007). Remand in such a case is discretionary. Although 28 U.S.C. § 1447(c) provides, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," this does not compel remand where federal question jurisdiction existed at the time of removal and the federal claim is later dismissed. *Albingia Versicherungs A.G. v. Schenker Int'l Inc.,* 344 F.3d 931, 936 (9th Cir.2003) (court had discretion to exercise supplemental jurisdiction

must show good cause for adding KBLA as a party after the cutoff date of December 15, 2006 for adding parties. KB Home contends that the Court should not grant plaintiff leave to file the proposed TAC because plaintiff cannot show good cause for failing to add KBLA prior to the cutoff date. KB Home maintains that plaintiff knew that KBLA was her employer when she worked there. Additionally, KB Home notes that plaintiff's first filed complaint in this action named KBLA as party defendant and described KBLA as her employer.[9] Moreover, KB Home asserts that as of October 30, 2006, when KB Home filed its answer to the SAC, plaintiff was on notice of KB Home's intention to defend on the ground that it was not plaintiff's employer. KB Home thus argues that plaintiff was on notice as to the possibility that KB Home may have been an improper defendant well before the cutoff date for adding parties. Accordingly, KB Home argues that plaintiff's failure to add or substitute KBLA as party defendant prior to the cutoff date displays a lack of the sort of diligence required for her to make a showing of good cause under Rule 16(b).[10]

Plaintiff responds that she can show good cause for seeking to add KBLA as party defendant after the cutoff date for adding parties. While apparently conceding that she could have maintained an action against KBLA from the beginning, plaintiff contends that she held the reasonable belief that KB Home was her employer and she "proceeded accordingly."[11]

over state law claims after federal claim dismissed). The same holds true when a complaint is amended to remove any federal claim. *See Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir.2002); *Pantazis v. Fior D'Italia, Inc.*, 1994 WL 519469, *2, 1994 U.S. Dist. 13622, *5–6 (N.D.Cal.1994).

9. Plaintiff's initial complaint, filed in Los Angeles County Superior Court on June 22, 2006, names KBLA as party defendant. Decl. of Margaret Hart ("Hart Decl.") at Ex. 5. Plaintiffs first amended complaint, filed in Los Angeles County Superior Court on July 13, 2006, adds KB Home as party defendant in place of KBLA. Hart Decl. at Ex. 6.

10. KB Home further directs the Court's attention to a class action captioned *McNeely v. KB Home Greater Los Angeles, Inc.*, Case No. BC374272, which plaintiff's counsel filed in the Los Angeles County Superior Court on July 16, 2007. This class action alleges nearly identical claims to those in plaintiff's proposed TAC, with the difference that the claims in the proposed TAC are alleged in plaintiff's individual capacity. Additionally, KB Home asserts that the named plaintiffs in *McNeely*, Stacey McNeeley and Heather Reyes, were putative class members in the instant action until the Court denied class certification. KB Home maintains that these individuals provided declarations in support of plaintiff's motion for class certification. Additionally,

the plaintiffs in *McNeely* represent a purported class consisting of

> All persons who are employed or have been employed, and who have worked as salespersons at [KBLA] in the State of California since four (4) years prior to the filing of this action, and have been paid commission on a flat fee basis.

Hart Decl. at Ex. 12. KB Home maintains that plaintiff is a member of this class as so defined. KB Home asserts that KBLA filed an answer in the *McNeely* action on September 12, 2007, and that discovery in this action has commenced.

Plaintiff responds that the existence of the *McNeely* action should not cause the Court to abstain from hearing the claims plaintiff alleges in the proposed TAC. Plaintiff contends that she is not properly a class member in the *McNeely* action because her litigation in the instant action is pending. Additionally, plaintiff argues that she "seeks redress in this matter and desires to see it through to conclusion on the merits." Finally, plaintiff asserts that she would opt out of the *McNeely* class in any event.

11. At the October 15, 2007 hearing herein, counsel for plaintiff argued that he had dismissed KBLA earlier in this action because he would have been precluded from proceeding on a classwide basis by the arbitration clause

PL's Reply at 5. Plaintiff argues that she could not have determined that KB Home was not legally her employer until the Court denied her motion for class certification. Plaintiff further argues that following the issuance of this order, plaintiff was diligent in filing the instant motion to amend complaint that would add KBLA as party defendant. Plaintiff appears to argue that because she moved diligently to add KBLA as a defendant when she learned that this would be necessary to preserve her claims, she has shown good cause for her delay, as required under Rule 16(b).

Plaintiff's argument that she was diligent in proceeding against KBLA once she discovered that KB Home was an improper defendant is not convincing. Plaintiff contends that she made this discovery when the Court issued its on July 9, 2007 order that denied her motion for class certification. However, plaintiff did not file the instant motion to amend complaint until September 18, 2007—after KB Home filed the instant motion for summary judgment on September 12, 2007. Plaintiff contends that she "could not possibly have acted more swiftly" in moving to amend her complaint because, under Local Rule 7–3, she was required to meet and confer with KB Home at least twenty days prior to the filing of her motion to amend complaint.[12] PL's Reply at 4. However, plaintiff waited considerably longer than twenty days after the Court's July 9, 2007 order to file the instant motion to amend complaint, and she does not argue that KB Home

prevented her from scheduling an earlier Rule 7–3 conference. Contrary to plaintiffs stated reasons for filing the instant motion to amend complaint, the circumstances suggest that plaintiff filed this motion in response to KB Home's filing of its motion for summary judgment.

In any event, plaintiff's argument that she acted diligently in attempting to allege claims against the correct party, KBLA, is unconvincing. Plaintiff's contention that she did not learn that KB Home was improperly a defendant in the instant action until the Court issued its order denying class certification does not explain why plaintiff did not allege claims against KBLA prior to the cutoff date for adding parties. Plaintiff does not contend that she ever mistakenly believed that KBLA was not her employer or that KBLA was for some other reason an improper defendant to this action. It does not appear that plaintiff could reasonably make this argument, given the undisputed evidence that plaintiff signed salesperson employment agreements with KBLA, named KBLA as party defendant when she commenced this action, and described KBLA as her employer in her first filed complaint. Further, plaintiffs concession that the decision to pursue KB Home, and not its subsidiaries including, but not limited to, KBLA, demonstrates that the earlier decision to dismiss KBLA was a tactical decision. Accordingly, plaintiff has not shown that she was mistaken in proceed-

in the KBLA salesperson employment agreement, and that in any event, had he joined KBLA he would have been required to join other subsidiaries of KB Home, which in turn would have exposed plaintiff to claims of misjoinder. It thus appears that counsel's decision to pursue KB Home, as opposed to KBLA, was a knowing, tactical decision.

**12.** Plaintiff asserts that she waited for an unspecified "twenty-one day safe harbor period"

before filing the instant motion to amend complaint. Although is unclear to what safe harbor period plaintiff refers, the Court construes plaintiff's assertion as an imprecise reference to the Local Rule 7–3's requirement that a conference of counsel occur at least twenty days prior to the filing of a motion that must be filed within a specified period of time.

ing against KB Home or diligent in seeking to add KBLA.

Therefore, plaintiff has not shown good cause for her delay in seeking to add KBLA, as required under Rule 16(b). Accordingly, the Court DENIES plaintiffs motion to amend complaint.

### C. Motion to Compel Arbitration

■ Plaintiff moves for an order compelling the parties to arbitrate plaintiffs claims. The Court today grants KB Home's motion for summary judgment, which disposes of plaintiff's claims against KB Home. Accordingly, the Court DENIES plaintiff's motion to compel arbitration as moot.[13]

## IV. CONCLUSION

In accordance with the foregoing, the Court GRANTS KB Home's motion for summary judgment. The Court DENIES plaintiff's motion to amend complaint. The Court DENIES plaintiff's motion to compel arbitration as moot.

IT IS SO ORDERED.

**13.** Although the Court does not expressly reach the question of whether this dispute is arbitrable, it notes that KB Home does not appear to be a party to the arbitration agreement between plaintiff and KBLA and, in any event, plaintiff's failure to demand arbitration at the commencement of this proceeding is a waiver of her rights to arbitration. *See St. Agnes Medical Center v. PacifiCare of California,* 31 Cal.4th 1187, 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727 (2003); *Van Ness Townhouses v. Mar Indus. Corp.,* 862 F.2d 754, 759 (9th Cir.1988).